UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MIGUEL JOSE GUITRON,

Petitioner,

v.

RENEE BAKER, *et al.*,

Respondents.

Case No. 3:18-cv-00235-MMD-CBC

ORDER

## I. INTRODUCTION

This action is a petition for writ of habeas corpus by Miguel Jose Guitron, an individual incarcerated at Nevada's Lovelock Correctional Center. Petitioner is represented by appointed counsel. Respondents have filed a motion to dismiss. For the following reasons, the Court will deny the motion to dismiss and set a schedule for Respondents to file an answer.

## II. BACKGROUND

In its opinion on Petitioner's direct appeal, the Nevada Court of Appeals described the factual background of the case as follows:

> Guitron met the victim's mother, Anita, in Las Vegas in 1997 or 1998. The couple dated for some time, after which Anita moved to Michigan. When she left Las Vegas, Anita was approximately two to three months pregnant with the victim, who she asserts is Guitron's child. However, Anita did not tell Guitron she was pregnant and she had no contact with Guitron for some years after leaving Las Vegas. When the victim was five years old, Anita applied for child support from Guitron, which the court awarded following a positive paternity test.
>
> In October 2010, Guitron called Anita while she was living in Ohio with the victim and her two other children fathered by another man. The victim, who was then 11 years old, overheard the conversation, realized it was her father on the phone, and asked to speak with him. The victim testified that during this first telephone conversation, Guitron told her he was

|   |   |
|---|---|
| 1 | her father. Anita described the victim as "a kid in a candy store" upon speaking with her father for the first time. |
| 2 | |
| 3 | Following this phone call, Anita moved back to Las Vegas in late 2010 and resumed her relationship with Guitron. The victim, who was in elementary school and enrolled in an Individualized Education Plan because she was a slow learner, was thrilled to finally meet her father. Guitron began living with the family shortly after the move. During this time, the victim discussed sex with Anita and had at least some knowledge and understanding of sex. |

1 her father. Anita described the victim as "a kid in a candy store" upon speaking with her father for the first time.

Following this phone call, Anita moved back to Las Vegas in late 2010 and resumed her relationship with Guitron. The victim, who was in elementary school and enrolled in an Individualized Education Plan because she was a slow learner, was thrilled to finally meet her father. Guitron began living with the family shortly after the move. During this time, the victim discussed sex with Anita and had at least some knowledge and understanding of sex.

When the victim was 12 years old, Anita realized the victim was pregnant. Initially, the victim told Anita a neighbor boy was the father. The next day, Anita took the victim to a pregnancy center where medical personnel confirmed she was eight months pregnant. Based on the victim's statements during the examination, the medical staff called the police and alleged Guitron had sexually assaulted the victim. The victim then admitted to both Anita and the police that Guitron was the baby's father. She explained she initially lied because Guitron told her to say the neighbor boy was the father. DNA testing by the Las Vegas Metropolitan Police Department conclusively proved Guitron was the father of the victim's baby. Additionally, Guitron sent letters to the victim during the pendency of the case, openly admitting he was the baby's father.

At trial, based on his statement during an interview to detectives prior to his arrest, Guitron asserted he and the victim only engaged in sex on one occasion. Further, he alleged the victim initiated that single sexual encounter, which occurred while Guitron was intoxicated and partially unconscious. Guitron argued the victim was sexually curious and wanted to have sex with him, and she was capable of understanding the consequences of her actions despite her age. He also asserted the State did not meet its burden of proof on the incest charge because the State did not present DNA evidence proving he was the victim's father. The State countered with evidence Guitron had groomed the victim and engaged in sexual conduct with her on multiple occasions, even when the victim resisted his advances. The State also presented witness testimony that Guitron was the victim's father.

The jury convicted Guitron of incest, four counts of sexual assault with a minor under the age of 14, and two counts of lewdness with a child under the age of 14.

(ECF No. 25-35 at 3-5 (Opinion, Exh. 76 at 2-4).) Petitioner was sentenced as follows:

Count 1, incest, life in prison with the possibility of parole after two years;

Count 2, sexual assault with a child under the age of 14, life in prison with the possibility of parole after 35 years, consecutive to the sentence on Count 1;

Count 4, sexual assault with a child under the age of 14, life in prison with the possibility of parole after 35 years, concurrent with the sentence on Count 2;

2

> Count 6, sexual assault with a child under the age of 14, life in prison with the possibility of parole after 35 years, concurrent with the sentence on Count 4;
>
> Count 8, sexual assault with a child under the age of 14, life in prison with the possibility of parole after 35 years, concurrent with the sentence on Count 6;
>
> Count 10, lewdness with a child under the age of 14, life in prison with the possibility of parole after 10 years, consecutive to the sentence on Count 8; and
>
> Count 11, lewdness with a child under the age of 14, life in prison with the possibility of parole after 10 years, concurrent with the sentence on Count 10.

(ECF No. 25-2 at 3 (Judgment of Conviction, Exh. 43 at 2).) The judgment of conviction was filed on October 8, 2013. (*See id.*)

Petitioner appealed, and the Nevada Court of Appeals affirmed the judgment of conviction on May 21, 2015. (*See* ECF No. 25-35 (Opinion, Exh. 76).) The remittitur was issued on June 15, 2015. (*See* ECF No. 25-36 (Remittitur, Exh. 77).)

Petitioner filed a petition for writ of habeas corpus, *pro se*, in the state district court on June 9, 2016. (*See* ECF No. 26-6 (Petition for Writ of Habeas Corpus, Exh. 87); ECF No. 26-5 (Memorandum of Points and Authorities, Exh. 86).) Subsequently, with counsel, Petitioner supplemented his petition. (*See* ECF No. 26-23 (Supplemental Petition, Exh. 104).) The state district court denied the petition on January 25, 2017. (*See* ECF No. 26-27 (Findings of Fact, Conclusions of Law and Order, Exh. 108).) Petitioner appealed, and the Nevada Supreme Court affirmed on January 10, 2018. (*See* ECF No. 26-43 (Order of Affirmance, Exh. 124).) The Supreme Court's remittitur was issued on February 5, 2018. (*See* ECF No. 26-44 (Remittitur, Exh. 125).)

This Court received Petitioner's original *pro se* habeas petition, initiating this action, on May 22, 2018 (ECF No. 7). The Court appointed counsel to represent Petitioner (ECF No. 6), and, with counsel, Petitioner filed an amended habeas petition on February 20, 2019 (ECF No. 19). Petitioner's amended petition includes the following claims:

///

///

> Ground 1: "There was insufficient evidence produced at trial to establish beyond a reasonable doubt that Mr. Guitron was guilty of sexual assault with a minor under 14 years of age." (Amended Petition (ECF No. 19), p. 9.)
>
> Ground 2: "The court violated Mr. Guitron's constitutionally guaranteed right to due process when it denied his motion to admit evidence relating to the alleged victim's sexual knowledge." (*Id.* at 13.)
>
> Ground 3: "The trial court violated the equal protection clauses of the United States and Nevada Constitutions by denying challenges to discriminatory practices prohibited by *Batson v. Kentucky*." (*Id.* at 19.)

On May 14, 2019, Respondents filed a motion to dismiss (ECF No. 23), arguing that all of Petitioner's claims are barred by the statute of limitations. Petitioner filed an opposition to the motion on July 12, 2019 (ECF No. 27), and Respondents filed a reply on August 8, 2019 (ECF No. 30).

## III. DISCUSSION

The Antiterrorism and Effective Death Penalty Act (AEDPA), enacted in 1996, established a one-year statute of limitations for federal habeas petitions filed by prisoners challenging state convictions; the statue provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. 2244(d)(1).

///

The AEDPA statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. *See* 28 U.S.C. § 2244(d)(2). The AEDPA statute of limitations is also subject to equitable tolling; a habeas petitioner is entitled to equitable tolling if the petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009).

In this case, the parties are in agreement about when the limitations period for Petitioner's federal habeas petition would have expired absent any equitable tolling. Petitioner's conviction became final, and the limitations period began to run, on August 19, 2015, 90 days after the Nevada Court of Appeals ruled on his direct appeal. (*See* ECF No. 23 at 3 (Motion to Dismiss); ECF No. 27 at 3 (Opposition to Motion to Dismiss).) The limitations period then ran for 295 days, from August 19, 2015, to June 9, 2016, when Petitioner initiated his state habeas action. (*See* ECF No. 23 at 3; ECF No. 27 at 3.) The limitations period was then statutorily tolled, under 28 U.S.C. § 2244(d)(2), from June 9, 2016, to February 5, 2018, when the Nevada Supreme Court issued its remittitur after ruling on the appeal in Petitioner's state habeas action. (*See* ECF No. 23 at 3; ECF No. 27 at 3.) Without equitable tolling, the limitations period would have expired 70 days later, on April 16, 2018. (*See* ECF No. 23 at 3; ECF No. 27 at 4.)

Petitioner, however, shows that equitable tolling is warranted, because of delay—not caused by Petitioner or his counsel—in Petitioner receiving notice that his state habeas action had been completed.

Petitioner has submitted, in support of his argument, evidence, in the form of letters from his counsel in 2017, indicating that his counsel was attempting to keep him informed about the status of his state habeas action, and stated he would continue to do so, but that it appeared that not all of counsel's mail was reaching Petitioner. (*See* ECF No. 27-2 at 2 (Letter from counsel to Petitioner informing Petitioner that it appeared he was not

receiving all mail sent to him); ECF No. 27-2 at 3-4 (Letter from counsel to Petitioner stating that counsel would notify Petitioner when the appeal in his state habeas action was completed and would provide guidance on how to initiate a federal habeas action).)

Petitioner has also submitted evidence showing that his counsel wrote to him on March 2, 2018, to inform him that the Nevada Supreme Court had ruled on the appeal in his state habeas action, but that letter did not reach Petitioner, and Petitioner did not learn of the ruling until at least May 8, 2018, after his counsel wrote to him with this information for a second time. (*See* ECF No. 27-1 at 9) (counsel's first letter— not received by Petitioner—informing Petitioner of ruling); ECF No. 27-1 at 7-8 (counsel's second letter informing Petitioner of ruling); ECF No. 1-4 (affidavit of Stanley Rimer, an inmate who assisted Petitioner with his habeas litigation, stating that Petitioner did not receive notice of ruling until sometime between May 8 and 11, 2018).)

After Petitioner received notice of the Nevada Supreme Court's ruling, he promptly initiated this federal habeas action. Petitioner's original *pro se* petition reflects that Petitioner signed it and sent it for filing on May 18, 2018. (*See* ECF No. 7 (Petition for Writ of Habeas Corpus). This Court received that petition, and opened this case, on May 22, 2018.

Petitioner makes a compelling showing that, under the circumstances in this case, equitable tolling is warranted for the period from March 2 to May 8, 2018, while his counsel was attempting to inform Petitioner of the ruling on the appeal in his state habeas action. *See Holland*, 560 U.S. at 649 (regarding standard for equitable tolling); *Ramirez*, 571 F.3d at 997 (same). Petitioner has demonstrated that he acted diligently in initiating this action, but that there were extraordinary circumstances that prevented him from initiating the action in a timely manner.

Petitioner sent his petition for filing on May 18, 2018; that would have been 33 days late without equitable tolling. However, with equitable tolling from March 2 to May 8, 2018, a period of 67 days, Petitioner timely filed his original *pro se* habeas petition (ECF No. 7).
///

Petitioner's amended habeas petition was not filed until February 20, 2019 (ECF No. 19), long after the expiration of the limitations period. The timeliness of the claims in the amended petition, therefore, turns on the question whether those claims relate back to the filing of Petitioner's timely original petition. In *Mayle v. Felix*, 545 U.S. 644 (2005), the Supreme Court held that "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order," but "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650, 664. Respondents do not contest, and the Court finds, that all the claims in Petitioner's amended petition relate back to his original petition. (*See* ECF No. 27 at 10-12 (arguing the claims relate back); ECF No. 30 (not addressing issue).)

Therefore, the Court determines that the claims in Petitioner's amended habeas petition are not barred by the statute of limitations.

It is therefore ordered that Respondents' Motion to Dismiss (ECF No. 23) is denied.

It is further ordered that Respondents will have 90 days from the date of this order to file an answer. In all other respects, the schedule for further proceedings set forth in the order entered August 6, 2018 (ECF No. 10) will remain in effect.

DATED THIS 25th day of October 2019.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE